United States Bankruptcy Court
Southern District of Texas

**ENTERED**
September 22, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATED BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 24-33706 |
| **NICOLE VENICIA WILLIAMS,** § | |
| § | |
| Debtor. § | |
| § | |
| § | **CHAPTER 13** |

## MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART DEBTOR'S OBJECTION TO IRS PROOF OF CLAIM NO. 3

## BACKGROUND

On August 14, 2024, Nicole Venicia Williams (hereinafter "Debtor") filed a voluntary petition under Chapter 13 of Title 11 of the United States Bankruptcy Code. (ECF No. 1). The Internal Revenue Service (hereinafter "IRS") filed a proof of claim on August 30, 2024, and it later filed an amendment on October 3, 2024. In its proof of claim, the IRS asserts that it has three types of claims against the Debtor: (i) a secured claim for $5,734.39, (ii) an unsecured priority claim for $2,743.43, and (iii) an unsecured general claim for $58,031.74[1].

The secured claim portion of the IRS's proof of claim is secured by a lien on the Debtor's property and is for income the IRS contends the Debtor earned in 2020. (ECF No. 55 at 1). Although the Debtor's initial tax return reported no tax liability, the return was later reassessed due to a 1099-K received by Square, Inc. (also known as CashApp). (ECF No. 43 at 1). The IRS designated the amounts shown on the 1099-K as the Debtor's additional income and it resulted in the tax liability listed on the proof of claim. (ECF No. 43 at 1). The unsecured priority claim is for income earned in the 2023 tax year. Lastly, the unsecured general

---

[1] The Debtor objected to the 2018 civil penalty portion of the total unsecured general claim — a total of $57,978.28 including interest.

claim is for a civil penalty assessed against the Debtor in 2020 for the 2018 tax year.

On November 18, 2024, the Debtor filed *Debtor's Objection to IRS Proof of Claim No. 3*. (ECF No. 43). There, she objected to the secured claim portion of the IRS's proof of claim asserting that the amounts listed on the 1099-K were not income. (ECF No. 43 at 1–2). She explained that she used the CashApp mobile application to "receive gifts from her friends and family for her children" and "to transfer her own money to and from others to help her pay household bills and expenses." (ECF No. 43 at 2). She also objected to the IRS's unsecured general claim for the civil penalties assessed against her in 2020. (ECF No. 43 at 2). She alleged she made "over 20 attempts to contact the IRS to determine the root cause of the [c]ivil [p]enalties" but was never able to get clarity. (ECF No. 43 at 2). The Debtor did not object to the unsecured priority claim for the 2023 taxes. (ECF No. 43 at 2).

In its response, the IRS stated it lacked sufficient information to admit or deny the Debtor's allegations regarding the 1099-K and the civil penalties. (ECF No. 55 at 1). It instead contended that the civil penalties were presumed valid under the Bankruptcy Rule 3001(f). (ECF No. 55 at 2).

The parties appeared before this Court for multiple hearings concerning Debtor's objection. In an evidentiary hearing held on April 23, 2025, the Debtor introduced an email exchange with a Square, Inc. tax team member stating they were unable to locate an account with the IRS notice the Debtor provided. (ECF No. 69-2). The Debtor also produced a screenshot of her user account showing she joined in November 2021—meaning she did not have had an account in 2020 when the transactions the IRS designated as income were made. (ECF No. 69-2). The IRS presented testimony from Ms. Dorcas Basaldua, an IRS Bankruptcy Advisor. (ECF No. 70). Ms. Basaldua testified that the IRS computer records showed the IRS received a 1099-K from Square, Inc., that the 1099-K showed various amounts the Debtor received in 2020, and to her knowledge, there was no error. Ms. Basaldua described that taxpayers who have issues with a 1099-K are advised to go back to the payor and ask them to submit a corrected 1099-K.

As to the civil penalties, the Debtor testified that she has prepared taxes for her clients on a seasonal basis for seventeen years.

She testified that from the time she received notice of the penalties in a 2020 letter, she had done all she could to reach out to the IRS and understand the penalties assessed against her. An IRS representative, who she identified as Ms. Jones, came to her home but she was not able to give the Debtor any additional information. The only explanation the Debtor ever received from the IRS was that it was possibly a computer error. The IRS witness, Ms. Basaldua, testified that in 2018 the Debtor was assessed 111 violations under IRC 6695(g)[2], but other than knowing they were due diligence violations, she was unsure exactly what the 111 violations were based on.

At a second evidentiary hearing, held on June 18, 2025, the IRS produced additional testimony by Mr. Epstein, an IRS Senior Program Analyst, who for the first time gave the Debtor, and this Court, some clarity as to why the civil penalties were assessed. (ECF No. 80). He explained that the IRS selected 50 taxpayers to review out of the pool of clients the Debtor provided tax preparation services for. In assessing those cases, the IRS identified whether any tax credits were claimed on their tax returns and sought to meet with the Debtor to determine whether she met all the due diligence requirements expected of tax preparers under IRC 6695(g).

The IRS attempted to contact the Debtor but was unable to reach her at three different addresses and phone numbers. (ECF No. 79-1). It introduced into evidence an "Examining Officer's Activity Record" evidencing the various dates and methods the IRS attempted to reach the Debtor. (ECF No. 79-1). Mr. Epstein explained that in these types

---

[2] 26 U.S.C. § 6695(g), titled "Failure to be diligent in determining eligibility for certain tax benefits" provides:

> Any person who is a tax return preparer with respect to any return or claim for refund who fails to comply with due diligence requirements imposed by the Secretary by regulations with respect to determining— (1) eligibility to file as a head of household (as defined in section 2(b) [26 USCS § 2(b)]) on the return, or (2) eligibility for, or the amount of, the credit allowable by section 24, 25A(a)(1), or 32 [26 USCS § 24, 25A(a)(1), or 32], shall pay a penalty of $500 for each such failure.

of cases, when the IRS cannot contact the preparer, it does not know whether they met the due diligence requirements and thus the agency issues a penalty by default.

Further, the IRS presented a spreadsheet accounting for each client chosen for review and noting beside each: "Preparer was non-responsive at 3 addresses and 3 phone numbers. Field visit showed address has no viable business."[3] (ECF No. 79-2). He explained that the Debtor received a violation for each credit claimed for each of her 50 clients selected for review. For example, if her client's tax return claimed three tax credits, then the Debtor received three violations for that client. He emphasized that it is the tax preparer's duty to respond to the IRS's requests for a due diligence review and that it is their responsibility to keep all their contact information current and notify the IRS if they move addresses or change phone numbers.

Since the Debtor received the March 2020 letter from the IRS, the penalties have continued to grow in interest and are represented in the IRS's proof of claim as totaling $57,978.28.[4]

## JURISDICTION AND VENUE

28 U.S.C. § 1334(a) provides the district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a

---

[3] In the Spreadsheet of Preparer Violations offered by the IRS, the spreadsheet has a column named "Issues Preparer should have addressed". Under each tax credit reviewed, and civil penalty assessed, the same response is indicated: "Preparer was non-responsive at 3 addresses and 3 phone numbers. Field visit showed address has no viable business."

[4] The total amount of unsecured general claims is $58,031.74. This number includes the $57,978.28 civil penalty plus a $53.46 penalty for the unsecured priority claim.

core proceeding which the Court can consider under 28 U.S.C. §§157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

A creditor's proof of claim, filed in accordance with the Bankruptcy Rules, is "prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). If a debtor objects to a creditor's claim, it is their burden to "present enough evidence to overcome the *prima facie* effect of the claim." *McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998). The Ninth Circuit in *In re Holm* noted:

> In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.

931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)).

If the Debtor succeeds in overcoming the *prima facie* effect of the claim, then the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re Tran*, 351 B.R. 440, 445 (Bankr. S.D. Tex. 2006); *In re All-American Auxiliary Asso.*, 95 B.R. 540, 545 (Bankr. S.D. Ohio 1989). The claimant always carries with it the ultimate burden of persuasion. *See In re Holm*, 931 F.2d at 623.

A bankruptcy judge's ability to rule on claims against the estate is central to the bankruptcy system. *See In re Hinkley*, 58 B.R. 339, 343 (Bankr. S.D. Tex. 1986) (citing *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985)). The Court may inquire into any claim asserted against the Debtor's estate and disallow it if the claim is without legality. *Id.* Furthermore, under § 505, a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505.

## DISCUSSION

The Debtor's objection relates to two distinct portions of the IRS's proof of claim: the secured claim and the unsecured general claim. (ECF No. 43). As such, the Court will discuss each portion of the IRS's claim in turn.

### I.   THE IRS'S SECURED CLAIM

When a party in interest objects to a proof of claim, the objecting party must introduce enough evidence to overcome the presumption of validity in the claim. *See In re Tran*, 351 B.R. at 445. If it is successful, then the court must determine if the creditor proved the validity of its claim by a preponderance of the evidence. *See In re All-American Auxiliary Asso.*, 95 B.R. at 545. Thus, first we must analyze whether the objecting party, here the Debtor, has introduced sufficient evidence to rebut the *prima facie* validity in the IRS's proof of claim. If the Debtor was successful, then we must determine whether the IRS proved the validity of its claim by a preponderance of the evidence.

In her objection, the Debtor initially asserted that she used CashApp to receive gifts from family and friends and to pay household bills, but not as a method of receiving income. (ECF No. 43). After further investigation, the Debtor discovered she did not have had an account in 2020. The Debtor presented an email exchange from a Square, Inc. team member explaining that they could not locate an account or a 1099-K for her using the IRS notice as a reference. (ECF No. 69-2). The Debtor further presented a screenshot showing she had been a CashApp account user since November 2021. (ECF No. 69-2). In light of the evidence presented by the Debtor, reflecting that she did not have had a CashApp account in 2020, this Court determines the Debtor introduced sufficient evidence to rebut the presumption of validity in the IRS's secured claim.

Having overcome the presumption, it was then the IRS's burden to prove the validity of its claim. *See In re 804 Congress, L.L.C.,* 529 B.R. 213, 219 (Bankr. W.D. Tex. 2015) ("If the objecting party produces sufficient rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence."). The IRS has not met its burden because it did not produce sufficient evidence to support their claim. Aside from Ms. Basaldua's testimony that their computer systems reflected the IRS received a 1099-K showing various amounts

the Debtor received in 2020, the agency did not produce the 1099-K it received. Nor did the IRS provide any evidence supporting how it arrived at the conclusion that the 1099-K reflected the Debtor's additional income in 2020—despite the Debtor's assertion that she did not have a CashApp user account in 2020. Having concluded that the IRS did not meet its burden of persuasion, the Debtor's objection as to the secured claim portion of the IRS's Proof of Claim is sustained.

## II. THE IRS'S UNSECURED GENERAL CLAIM

Next, the Court will analyze whether the Debtor rebutted the *prima facie* validity attributed to the IRS's unsecured general claim. *See In re Tran*, 351B.R. at 445. If the Debtor was successful, the Court will then analyze whether the IRS met its burden of proving the validity of its claim. *See id.* ("If the objecting party succeeds [in overcoming the *prima facie* effect of the claim], the creditor must prove the validity of the claim.").

The IRS assessed a $57,720 penalty against the Debtor that currently stands at $57,978.28 including interest. (ECF No. 67-1); (ECF No. 43 at 2). This number is reflected in the IRS's amended proof of claim as an unsecured general claim and is *prime facie* evidence of its validity. *See* Fed. R. Bankr. P. 3001(f). The Debtor objected to this portion of the claim and proffered testimony that she had received notice of the penalties in 2020 and did everything in her ability to contact an IRS representative who could assist her in understanding the penalties. (ECF No. 43 at 2). She testified that she called the IRS on multiple occasions for several years, and nobody could explain to her why the penalties were assessed. The Debtor further testified that she was visited at her home by Ms. Jones, an IRS agent, and she could not give her any information on the penalties. The only explanation she ever received from the IRS was that it was a possible computer error.

This Court finds that the Debtor's testimony was sufficient to rebut the presumption of validity. *See In re Tran*, 351B.R. at 445. The Debtor's testimonial evidence demonstrates that not one of the many agents she spoke to over the last several years could explain the civil penalties, and the only explanation she ever received was that it was a computer error. This evidence was enough to cast doubt on whether the civil penalties were properly assessed. It was then the IRS's burden to persuade this Court of the validity of its claim by a preponderance of the

evidence, and it did so. *See In re All-American Auxiliary Asso.*, 95 B.R. at 545.

At the June evidentiary hearing, the IRS presented testimony from Mr. Epstein explaining the Debtor had received 111 tax preparer violations not for her inability to keep records for her clients but for the IRS's inability to get a response from the Debtor regarding the due diligence review. The IRS introduced evidence, through the Examining Officer's Activity Record, that shows the IRS sent Letter 6199[5] to the Debtor's home address on October 10, 2019. (ECF No. 79-1 at 1). After receiving no response, the IRS called two different numbers on record on November 6, 2019, and it sent letters to two additional addresses on November 21, 2019 and February 13, 2020. (ECF No. 79-1 at 1). The agency called an additional number on February 24, 2020. (ECF No. 79-1 at 1). Lastly, an agent visited one of the Debtor's addresses and found "no indication of a business being run" on February 25, 2020. (ECF No. 79-1 at 1). After the IRS's repeated attempts to contact the Debtor, to no avail, it assessed the civil penalties disputed here. (ECF No. 79-1 at 2). Mr. Epstein testified that it is a tax preparer's duty to keep their contact information current and the penalties were assessed according to protocol—i.e., if the IRS can't find the tax preparer to conduct the due diligence review IRC 6695(g) contemplates, then the civil penalties are assessed by default.

Although the Debtor testified she made repeated attempts to get an explanation for the penalties, these attempts were made after the penalties had already been assessed for the agency's inability to contact the Debtor to conduct the due diligence review. As such, this Court holds that the IRS has provided sufficient evidence to support the validity of its claim by a preponderance of the evidence. Therefore, the Debtor's objection to the IRS's unsecured general claim is overruled.

---

[5] IRS Letter 6199 is a due diligence visit request. *See Auditing for due diligence compliance*, IRS, https://www.irs.gov/tax-professionals/eitc-central/auditing-for-due-diligence-compliance (Sept. 4, 2025).

## CONCLUSION

For the reasons described above, this Court sustains in part and overrules in part the *Debtor's Objection to IRS Proof of Claim No. 3*. (ECF No. 43). A separate order will issue.

SIGNED 09/22/2025

Alfredo R Pérez
United States Bankruptcy Judge